CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 0 4 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HARRY WALKER,<br>Plaintiff, | )<br>) Civil Action No. 7:05-cv-00010<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| MORGAN SCOTT, et al.,<br>Defendants. | ) By: Hon. James C. Turk<br>) Senior United States District Judge |

Plaintiff Harry Walker filed this pro se civil action, raising claims pursuant to 42 U.S.C. §1983 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 396 (1971), with jurisdiction vested under 28 U.S.C. §§1331-1343 (2005).[1] Specifically, Walker alleges that the defendants maliciously prosecuted him, subjected his residence to unreasonable searches on two separate occasions, May 14, 2002, and September 29, 2003, subjected him to an unreasonable arrest and false imprisonment, and harmed his reputation. He seeks to recover monetary damages and to have a New York felony conviction reversed. Now ripe for the court's consideration are Defendant Pulliam's motion to dismiss and Defendant Brumbaugh's motion to dismiss/motion for summary judgment.

The court notified plaintiff of defendants' motions as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned plaintiff that judgment might be granted for the defendants if he did not respond to the motions by filing affidavits or other documents contradicting the defendant's evidence or otherwise explaining his claims. The plaintiff has responded, making the matter ripe for the court's consideration. Upon review of the record,[2] the court concludes that defendants' motions must be granted

---

[1] The claims against Major R. S. Pulliam, a state police officer, arise pursuant to § 1983, while the claims against Brett Brumbaugh, a United States postal inspector, arise under Bivens with jurisdiction in this court under 28 U.S.C. § 1331 (2005). See also Radin v United States, 699 F.2d 681, 684 (4th Cir. 1983).

[2] In addition to the pleadings and exhibits submitted by the parties in this civil action, the court also reviewed the record of the criminal proceedings against Walker in this court, United States v. Aquil, No. 7:02-cr-00102.

1

## I. Background

On March 5, 2002, two black males, armed with handguns and wearing stocking caps, sunglasses and athletic shoes, robbed the United States Post Office in Vernon Hill, Virginia. They stole approximately 76 blank postal money orders, sequentially numbered, a money order imprinting machine, and over $1000 in cash. While investigating the robbery, Postal Inspector Brumbaugh learned that someone had used one of the stolen money orders to purchase a DVD player from Wal-Mart in Roxboro, North Carolina a few days after the robbery.[3] In mid-March, 2002, Wayne's Auto Sales of Danville, Virginia, attempted to redeem five more stolen money orders. In May 2002, a salesperson at the auto dealership told investigators that in mid-March, an individual identified as "Harry" used the five money orders (totaling $2488.94) to make a down payment on a Ford van. Harry told the salesperson that a woman would return in a few days with additional money and complete the purchase. A woman identified as Sabrina Jackson came to the dealership on March 14, 2002, presented an additional $1000, and completed the paperwork to buy the van. Major Pulliam showed the salesperson a photograph of Harry Walker, and the salesperson identified Walker as the "Harry" who had presented the money orders toward the purchase of the van in March.

Using this information, Brumbaugh obtained a warrant to search Walker's residence in South Boston, Virginia, and to seize any evidence related to the stolen money orders. Brumbaugh and others executed the warrant on May 14, 2002. They did not find any of the items specified in the warrant. Later that day, however, they obtained a secondary warrant to seize items they had seen during the initial search that they believed could be related to the robbery: a stocking mask, a gun and ammunition, athletic shoes, telephone records of calls made to Brooklyn, New York (where several other stolen money orders had been redeemed), and a DVD player.

---

[3]Other stolen money orders were redeemed by various individuals in Maryland and New York. One or more of these individuals eventually implicated Walker in a conspiracy to rob the post office and use the stolen money orders.

2

On October 16, 2002, a grand jury returned an indictment charging Harry Walker, a.k.a. Musa Aquil, with several counts related to possession and use of the money orders stolen during the post office robbery. An arrest warrant issued on October 17, 2002.[4]

Nearly a year after the indictment, on September 29, 2003, Major Pulliam told Brumbaugh that Walker was working on a ladder outside a residence in South Boston, Virginia. When two of Pulliam's plain clothes police officers arrived at the residence, they saw Walker still on the ladder. When he saw the officers, however, Walker descended the ladder and went into the residence. He refused to come out to talk with the police or the postal inspectors after they arrived. After several hours, Walker's father spoke with him and shortly thereafter, he surrendered to police without further incident.

Just before officers took Walker away in handcuffs, Brumbaugh saw him hug a woman later identified as Walker's sister. Walker told her, "It'll be okay; I got it put up." This comment made Brumbaugh suspicious that Walker might have hidden a gun or other items related to the robbery or the stolen money orders in the house before surrendering to authorities.

Officers had information that Walker sometimes shared the residence with the mother of his children, Ms. Wanda Majors. Ms. Majors was on the scene when Walker was arrested, and Brumbaugh asked her if she would consent to have the inspectors search the residence. He told her that she did not have to consent to the search, but that if she did not, he would seek a search warrant. He explained that until the warrant was complete, he would have the house secured and no one would be allowed to enter it; the time necessary to obtain the warrant was difficult to estimate because the process depended on the availability of the magistrate and other factors. After taking some time to consider the matter and reviewing the written consent to search form with Brumbaugh and another inspector, Majors signed the Consent to Search form. The form stated that she gave the consent voluntarily and that she could revoke her consent at any time.

---

[4] This warrant was initially returned as unexecuted because Walker was at large. Brumbaugh ultimately executed the warrant on September 29, 2003, once authorities located Walker. (Defts. Ex. 10).

3

She stayed in the house and spoke with the inspectors while they conducted the search. At no time did she ask them to stop the search or state that she revoked her consent. The inspectors seized a cell phone, paperwork, and other small items, but did not find any of the items stolen from the post office.

The Magistrate Judge conducted a hearing in Walker's case on September 30, 2006. Walker informed the court that he was not the person charged in the indictment. Nevertheless, the judge found probable cause to order that Walker be detained pending trial. Walker did not qualify for bond because of a pending detainer based on criminal charges from nine years before in New York. Subsequently, the government moved to dismiss the indictment without prejudice, stating that it needed time to evaluate newly acquired evidence. On February 27, 2004, the court granted the government's motion and dismissed the indictment against Walker without prejudice.

Walker filed this action in the United States District Court for the Southern District of New York. He signed and dated the complaint form on May 1, 2004, but the court did not receive it until May 24, 2004, in an envelope post-marked in South Boston, Virginia, on May 19, 2004. On December 29, 2004, the court in New York transferred the case to the Western District, noting that a substantial part of the action arose here. The transfer order and the complaint form itself indicate that Walker was incarcerated in New York.[5] For that reason, when this court received the file, it was classified as a prisoner civil rights action. Walker's later amendment indicates that New York officials released him from incarceration on May 7, 2004. In February 2005, the court dismissed numerous claims and defendants from the action, pursuant to 28 U.S.C. §1915A,[6] and directed Walker to amend his complaint to particularize his

---

[5]The transfer order also indicates that Walker paid the full filing fee to initiate the action.

[6]Specifically, the court dismissed all claims related to criminal charges against Walker in New York, all claims for damages for injuries allegedly suffered by plaintiff's family members as a result of the searches or plaintiff's arrest; and all claims against the Grant N.Y. District Attorney, the New York Court Part 61, Morgan Scott, and the South Boston, Virginia, Police Department. If Walker had been a prisoner at the time he filed the complaint, as he himself stated on the complaint

4

allegations against Brumbaugh and Pulliam, which he did.

Walker's allegations, even as amended, do not paint any clear picture of his claims. He complains that Brumbaugh: 1) accused him of a crime he did not commit, even though newspaper reports indicated the robbers were between 160 and 180 pounds, while Walker weighed 275 pounds; 2) did not allow family members to enter the house at the time of his arrest and "pressured" them into consenting to have officers search it by telling them that otherwise, they would have to stay outside until he was satisfied;[7] 3) did not investigate Walker's whereabouts at the time of the crime; 4) "falsified" evidence in order to obtain "frivolous" search warrants; 5) did not investigate whether Walker had been at the residence between the time of the crime and the search; 6) seized unspecified items not connected to the crime; 7) manipulated the grand jury by stating that unspecified seized items were related to the crime when victims had told him they were not; 8) kicked down the doors of Walker's home, leaving it unsecured after the arrest; 9) committed "false arrest" of Walker; 10) wrongfully imprisoned Walker; 11) caused harm to Walker's reputation; and 12) caused the media to report that Walker was one of the robbers. Walker alleges that Pulliam: a) participated in what he knew to be a false arrest; b) seized items from Walker's home that he knew were not connected to the criminal case he was investigating; c) entered unlawfully into Walker's home; d) harmed Walker's reputation; and e) did not uphold his responsibility as a police officer to ensure a lawful investigation.

## II. Analysis

The court may properly grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when, construing allegations in the light most favorable to plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations.

---

form, these claims would have been properly dismissed under § 1915A. In any event, all these claims are dismissable under Fed. R. Civ. P. 12(b)(6) for failure to state an actionable claim or under Fed. R. Civ. P. 4(m), as plaintiff, who was not proceeding in forma pauperis, did not accomplish service on any of these defendants within 120 days of filing his complaint on May 24, 2004.

[7]As stated, to the extent that this claim alleges that Brumbaugh violated the rights of Walker's family members, the court has already dismissed it by previous order.

5

Case 7:05-cv-00010-JCT-mfu    Document 55    Filed 05/04/06    Page 5 of 16    Pageid#: 233

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations").

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Fed. R. Civ. P. 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). In response to a motion for summary judgment, properly supported by affidavits, the nonmovant may not rest on the mere allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). He "must identify affirmative evidence from which a jury could find" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57(1986). Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the non-moving party. Id. at 247-48.

### A. Time-barred Claims

Walker's claims that the searches conducted on May 14, 2002 violated his Fourth Amendment rights are barred by the applicable statute of limitations. There exists no federal

6

statute of limitations applicable to complaints filed under 42 U.S.C. § 1983, and as such, courts must apply the general purpose, personal injury statute of limitations of the state in which the cause of action arose. Owens v. Okure, 488 U.S. 235, 236 (1989); Wilson v. Garcia, 471 U.S. 261, 279 (1985). Virginia Code § 8.01-243(A) sets a two-year limitation period for pursuing personal injury claims. Thus, § 1983 claims brought in Virginia must be filed within two years of accrual. Shelton v. Angelone, 148 F. Supp. 2d 670, 676-77 (W.D. Va. 2001). The same state statute applies in civil rights actions against federal officials under Bivens. Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983)). A civil action is filed for purposes of the statute of limitations on the date when the court receives the complaint. Wells v. Apfel, 103 F. Supp. 2d 893, 895-96 (W.D. Va. 2000) (finding that complaint was filed when received by the court, although proper filing fee was not paid at that time). A §1983 claim accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Under these principles, Walker's claims regarding the May 2002 searches accrued immediately after the searches. At that point, he knew facts sufficient to bring claims that defendants had subjected him to an unreasonable search and seizure. Walker's complaint was filed for purposes of the statute of limitations when United States District Court for the Southern District of New York (S.D.N.Y.) received his complaint on May 24, 2004.[8] The first two challenged searches and seizures occurred on May 14, 2002, more than two years before Walker filed this complaint. Therefore, all claims related to these searches or events leading up to these

---

[8]Walker admits that he did not mail his complaint to the court until after he was released from prison by New York authorities, and the mailing envelope is post-marked May 19, 2004, South Boston, Virginia. Therefore, Walker's complaint must be considered filed when it was received by the court on May 24, 2004, and not when he signed the complaint on May 1, 2004. Cf. Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991) (inmate's § 1983 action is commenced for purposes of the statute of limitations as soon as he delivers signed complaint to prison authorities for mailing to the court).

7

searches are time-barred under § 8.01-243(A).[9] Walker fails to offer any ground warranting equitable tolling.[10] Accordingly, the court will grant defendants' motions to dismiss as to all claims related to the searches on May 14, 2002.

## B. Qualified Immunity

The defendants assert that they are entitled to qualified immunity as to Walker's claims that relate to the investigation that ensued after the searches in May 2002, leading to his arrest and the search incident to his arrest on September 29, 2003. Qualified immunity protects government officials from civil suits for damages arising out of the exercise of their discretionary functions. Gould v. Davis, 165 F.3d. 265, 269 (1998). A government official is entitled to qualified immunity if a reasonable person in his position would not have known that his actions violated a clearly established statutory or constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1978); Butz v. Economou, 438 U.S. 478, 500-01 (1978) (qualified immunity standard developed for §1983 cases is applicable to Bivens actions against federal officials). If

---

[9] In any event, the record establishes that the search on May 14, 2002, was conducted pursuant to a valid search warrant supported by probable cause. A search warrant is valid if supported by probable cause, which exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Brumbaugh's affidavit demonstrated a fair probability to suspect that Walker had obtained five of the stolen money orders and used them, knowing they were stolen and that additional items related to the robbery or the stolen property might be found where he resided. A fair probability also existed that the items seen during the first search and seized pursuant to the secondary warrant might be related to the robbery or the stolen property. The fact that Walker does not resemble the robbery victims' descriptions of the actual robbers did not render it constitutionally unreasonable for law enforcement personnel to continue to investigate him for possible involvement with the robbery before the fact and/or with the stolen property after the fact.

[10] Rouse v. Lee, 339 F.3d.238, 246 (4th Cir. 2003) (en banc) (equitable tolling of statutory limitation period applies only "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result"); Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 617 (3d Cir. 1998) (finding equitable tolling inapplicable unless litigant demonstrates his exercise of "reasonable diligence in investigating and bringing [the] claims"). At the most, Walker alleges that he did not want to bring civil rights claims until the criminal proceedings and his incarceration in New York concluded. His speculation that a civil suit might harm his ongoing negotiations with New York authorities does not qualify as a circumstance external to his control that prevented him from filing a timely civil action about the May 2002 searches. Moreover, he does not demonstrate that his incarceration prevented him from filing suit about these searches; indeed, he obtained and completed the § 1983 complaint form while incarcerated in New York.

8

the facts, taken in the light most favorable to the plaintiff, do not state a claim that the officer's conduct violated a constitutional right, the officers have qualified immunity against the claims. Saucier v. Katz, 533 U.S. 194, 200 (2001); Butz, 438 U.S. at 500-01. If the conduct alleged does violate a constitutional right, the court must determine whether or not the contours of the right were clearly established at the time and whether or not a reasonable person in the officer's position would have known that his actions violated that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996).

### 1. Fourth Amendment/Malicious Prosecution Claims

There is a clearly established Fourth Amendment right to be free from search, arrest, or prosecution without probable cause.[11] Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000) (interpreting Albright v. Oliver, 510 U.S. 266 (1994)); Brooks v. City of Winston-Salem, 85 F.3d 178, 181-82 (4th Cir. 1996). A Fourth Amendment claim that an investigative officer arrested the plaintiff without probable cause (even with a facially valid warrant) or took other actions to encourage the decision to prosecute the plaintiff without probable cause is actionable under Bivens or § 1983.[12] Lambert, 223 F.3d at 262 (finding actionable claim against public officials

---

[11]In the Lambert decision, the Fourth Circuit found that § 1983 claims against public officials for malicious prosecution must allege Fourth Amendment violations and thus cannot arise under any other constitutional provision, such as substantive due process or equal protection. 223 F.3d at 261-63. A separate claim may arise for retaliatory prosecution under the First Amendment, alleging that public officials pursued prosecution of plaintiff without probable cause in retaliation for plaintiff's exercise of a constitutional right. See, e.g., Hartman v. Moore, ___ S. Ct. ___, No. 04-1495, 2006 WL 1082843 (April 26, 2006) (finding that First Amendment Bivens claim of retaliatory prosecution failed where plaintiff did not prove absence of probable cause to prosecute). To the extent that Walker attempts to base his claims of malicious prosecution on any constitutional right other than the Fourth Amendment, such claims are not actionable under § 1983 or Bivens. To the extent that Walker alleges a claim of retaliatory prosecution, his claim fails because he does not prove an absence of probable cause to prosecute or demonstrate that anyone prosecuted him in retaliation for his exercise of any constitutionally protected right.

[12]To the extent that Walker attempts to bring a claim of malicious prosecution, false arrest, or false imprisonment under Virginia common law, such state law claims are not actionable under § 1983. Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). The court declines to exercise supplemental jurisdiction over any such state law claim against Defendant Pulliam, pursuant to 28 U.S.C. § 1367(c). Any such state law claim against Defendant Brumbaugh is barred by sovereign immunity, as he took the challenged actions within the scope of his federal employment. See 28 U.S.C. § 2679(b)(1) (the Federal Tort Claims Act, FTCA); Westfall v. Erwin, 484 U.S. 292, 297-98

9

under the Fourth Amendment incorporating elements of analogous common law tort of malicious prosecution); Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998). As an element of such a claim, plaintiff must prove the absence of probable cause to prosecute. Lambert, 223 F.3d at 260. If investigative officials reasonably believed that there was probable cause to prosecute, they have qualified immunity against any Fourth Amendment claim of malicious prosecution, whether related to the investigation, the arrest, or search incident to arrest. Porterfield, 156 F.3d at 569. Moreover, if the investigating officer provided complete and accurate evidence to the prosecutor, who then made an independent assessment of probable cause and decided to seek an indictment, this intervening decision breaks the "causal chain" and insulates the investigator against constitutional claims for improper seizure, investigation, or prosecution. Rhodes v. Smithers, 939 F. Supp. 1256, 1273-74 (S.D. W. Va. 1995), aff'd, 91 F.3d 132 (4th Cir. 1996).

Probable cause requires more than mere suspicion of wrongdoing, but requires much less evidence than needed to convict. "Probable cause to justify an arrest arises when facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Porterfield, 156 F.3d at 569 (internal quotations omitted). When this objective standard of probability is considered in light of all the surrounding circumstances, even "seemingly innocent activity" may give rise to finding probable cause. Id.

Walker complains that defendants investigated, arrested, prosecuted, and detained him for crimes when they knew, or should have been able to discover, that he was innocent. The court construes these assertions as attempted Fourth Amendment claims incorporating elements of common law malicious prosecution, false arrest, and false imprisonment, actionable against the defendants under §1983 and Bivens. Walker gave several reasons that officers should have

---

(1988). Furthermore, the court need not address Walker's claim as one arising under the FTCA against the United States, as the record indicates that he has not exhausted administrative remedies as required. See 28 U.S.C. § 2675(a).

10

known he was innocent: he did not physically resemble the robbers, he offered lawful explanations of his possession of the items taken during the searches, he claimed to have an alibi for the time of the robbery and to be ignorant of the fact that the money orders he had used to purchase the vehicle were stolen. While this information, if proven credible, might have convinced a trial jury not to convict Walker of any crime, it did not eliminate defendants' reasonable belief that their evidence against Walker would "warrant a prudent person in believing" that he had been involved with the robbery and its proceeds before and/or after the fact as charged in the indictment. Thus, the officers reasonably believed that they were not violating the Fourth Amendment probable cause requirement in continuing their investigation of him and in providing their evidence to the prosecutor, who sought the indictment.

Moreover, Walker does not point to any inaccurate fact that defendants provided, or any exculpatory evidence that they failed to provide, to the prosecutor, who then independently assessed that evidence and decided to seek the indictment and the arrest warrant. The prosecutor's decision to take the case to the grand jury broke the causal chain, relieving Pulliam and Brumbaugh from liability for any Fourth Amendment claim of wrongful prosecution arising from the investigation of the case. Thus, Walker's allegations fail to state any Fourth Amendment claim whatsoever against Brumbaugh and Pulliam, regarding their pre-indictment investigation of him. As these defendants reasonably believed that their actions related to the investigation did not violate Walker's Fourth Amendment right to be free from such actions absent probable cause, they are entitled to qualified immunity as to all claims regarding this stage of the proceedings against Walker. The court will grant defendants' motions to dismiss as to such claims accordingly.

Walker's assertion that Brumbaugh misrepresented facts to the grand jury to procure the indictment is another attempted Fourth Amendment claim of malicious prosecution. Walker's vague and conclusory allegations utterly fail to support such a claim, however. At most, he alleges that Brumbaugh offered misleading testimony about items seized from Walker's

11

residence. He does not demonstrate that any such information was false or that it was material to the decision to indict. As stated, other evidence, unrelated to the searches of Walker's residence, supported the grand jury's finding of probable cause on which to indict. Most importantly, however, Brumbaugh is absolutely immune from any suit for damages arising from his testimony as a government witness before the grand jury. Lyle v. Sparks, 79 F.3d 372, 378 (4th Cir. 1996) (citing Briscoe v. LaHue, 460 U.S. 325 (1983)). The court will grant Brumbaugh's motion to dismiss as to any claims regarding his grand jury testimony.

Both defendants are entitled to qualified immunity as to Walker's claims of false arrest and false imprisonment. A public official cannot be held liable for a Fourth Amendment claim of false arrest when the arrest at issue was conducted pursuant to a facially valid arrest warrant. Porterfield, 156 F.3d at 568. An indictment satisfies, per se, the probable cause requirement for a subsequently issued arrest warrant based on the indictment. Kalina v. Fletcher, 522 U.S. 118, 129 (1997). Authorities arrested Walker on September 29, 2003, pursuant to an arrest warrant based on the October 16, 2002, indictment. Rightfully relying on the indictment and the warrant, defendants reasonably believed that Walker's arrest was supported by probable cause and was, therefore, constitutional. Walker fails to demonstrate that the validity of the arrest was affected in any way by officers' refusal to allow Walker's family to enter the house or by officers' alleged damage to the door upon entry.[13] Accordingly, defendants are entitled to qualified immunity as to Walker's claims alleging false arrest or seizure of his person.

Furthermore, Walker fails to allege facts stating any claim of false imprisonment. When pretrial seizure of the defendant is supported by probable cause and a neutral and detached

---

[13] Walker does not allege any specific facts about the damage to his door, who caused it or how or when. Even if he could prove that both Pulliam and Brumbaugh, personally, negligently or intentionally inflicted some compensable damage to his door, he has no claim actionable in this court. Such a claim would arise, if at all, under state tort law. As the court herein dismisses all §1983 claims against Pulliam, the court declines supplemental jurisdiction over state law claims related to door damage, pursuant to 28 U.S.C. § 1367( c). Any such state law claim for damages against Defendant Brumbaugh is barred by sovereign immunity, Westfall, 484 U.S. at 297-98, and Walker has not exhausted administrative remedies so as to proceed with an FTCA claim against the United States. See 28 U.S.C. § 2675(a).

12

judicial officer further evaluates probable cause as a condition of continued, pretrial restraint, the subsequent pretrial detention of the suspect is constitutionally reasonable. Brooks, 85 F.3d at 184. On September 30, 2003, the federal Magistrate Judge evaluated probable cause and determined that Walker should be detained on the charges for which he had been arrested. Walker fails to allege that either of the defendants made any inaccurate statement or took any action that illegitimately influenced the judge's decision. Once the probable cause determination for detention was made, the officers reasonably believed that Walker's imprisonment did not violate his Fourth Amendment rights. Thus, they are entitled to qualified immunity against any claim that they should have pushed for dismissal of the charges or release of the defendant. The court will grant defendants' motions to dismiss as to all claims related to Walker's arrest and detention on September 29, 2003..

**2. Search and Seizure on September 29, 2003**

Defendants are also entitled to qualified immunity as to any claims related to the search of Walker's residence on September 29, 2003. Although this search was not conducted pursuant to a warrant, a resident of the house, Ms. Majors, consented to the search. It is well established that obtaining a resident's voluntary consent to a search conducted is an exception to the normal constitutional requirements of proving probable cause and obtaining a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). Consent is voluntary if, given the "totality of the circumstances," it did not result from "duress or coercion, express or implied." Id. at 248. An agent's comment that the resident will not be allowed to enter her home while the agent seeks a search warrant does not render involuntary the resident's subsequent consent to a search.[14] United States v. Hummer, 916 F.2d 186, 190 (4th Cir. 1990 (finding that officer's promise to obtain search warrant did not taint subsequent consent to search), abrogated on other grounds;

---

[14]Furthermore, "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents," absent unreasonable delay in obtaining the warrant. Segura v. United States, 468 U.S. 796, 810-13 (1984).

13

United States v. Battle, 117 F. Supp. 2d 1175, 1179-80 (D. Kan. 2000) (finding that woman's consent to search was voluntary although officers told her that while obtaining a warrant, they would deny her access to her residence where her child was).

Under these principles, the court will grant Pulliam's motion to dismiss as to Walker's claims alleging improper search and seizure on September 29, 2003. Walker does not allege that Pulliam was involved in any way in obtaining Ms. Major's consent to search the house on that date. Even assuming that Pulliam was involved in the search itself, Ms. Majors' signed consent to search form gave him ample ground to believe that her consent was voluntary and that he would not violate any constitutional rights by conducting a search and seizing items pursuant to that consent. Walker does not allege facts suggesting that seizure of any items from the residence or vehicles fell outside the scope of Ms. Majors' consent.

Walker faults Pulliam in claim e) for failing to prevent or correct constitutional errors by others during the investigation and criminal proceedings as a whole. An official cannot be held automatically liable for constitutional wrongs committed by others; the doctrine of respondeat superior is inapplicable to §1983 actions. Shaw v. Straud, 13 F.3d 791, 799 (4th Cir. 1994). Moreover, as stated, Pulliam reasonably believed that all proceedings against Walker were supported by probable cause. He is entitled to qualified immunity as to all Walker's claims, and the court will grant his motion to dismiss in its entirety.

Defendant Brumbaugh is entitled to summary judgment as to all claims related to the September 29 search. In advising Ms. Majors that she would not be allowed to enter the house while he obtained a search warrant, he was merely following the constitutionally acceptable police procedure of securing a residence to prevent destruction of evidence he reasonably believed might be hidden inside. The record does not indicate that being excluded from the house posed great discomfort to Ms. Majors or her children or that the officers threatened them with any other disagreeable actions if she did not consent. It is undisputed that Ms. Majors knew she could refuse consent, thought over her decision carefully, taking time to read the form and its provisions

14

before signing it, and then chose to cooperate fully with the search itself. While the exclusion was no doubt inconvenient and may have influenced Ms. Majors's decision to consent, the circumstances do not support a finding that this inconvenience rose to the level of coercion or duress so as to invalidate her consent to the search. From his contact with Ms. Majors during the consent process and during the search itself, Brumbaugh reasonably believed her consent to be voluntary and valid. Thus, he also reasonably believed that his actions did not violate any constitutional rights. Finding no genuine issue of material fact in dispute, the court concludes that Brumbaugh is entitled to summary judgment on the ground of qualified immunity as to all claims related to the September 29, 2003 search.

### 3. Defamation

Finally, Walker sues Pulliam and Brumbaugh for harming his reputation. He complains that these officers provided misinformation to the media, causing publication of reports that Walker was one of the robbers. The court construes these allegations as claims of defamation. Because Walker fails to identify any evidence from which a jury could find that the defendants' allegedly defamatory statements to reporters deprived him of any constitutionally protected right, he fails to state any actionable federal claim here. See Paul v. Davis, 424 U.S. 693 (1976)(finding that injury to reputation from alleged defamation is not sufficient to state § 1983 claim absent showing that statements also caused injury to constitutionally protected right). Defendants are thus entitled to qualified immunity as to Walker's defamation claims under § 1983 and Bivens.[15] The court will grant their motions to dismiss accordingly as these claims.

### III. Conclusion

The court will grant Defendant Brumbaugh's motion for summary judgment as to all

---

[15] As the court herein dismisses all § 1983 claims against Pulliam, the court declines to exercise supplemental jurisdiction over any state law claim of defamation against this defendant, pursuant to 28 U.S.C. § 1367( c). Any such state law claim for damages against Defendant Brumbaugh is barred by sovereign immunity, Westfall, 484 U.S. at 297-98, and Walker has not exhausted administrative remedies so as to proceed with an FTCA claim against the United States. See 28 U.S.C. § 2675(a).

15

claims related to the September 29, 2003 search of Walker's residence. As to all other claims under § 1983 and <u>Bivens</u>, the court will grant defendants' motions to dismiss in accordance with the memorandum opinion. Finally, the court will dismiss all state law claims without prejudice. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

ENTER: This 4th day of May, 2006.

*[signature]*
Senior United States District Judge